at Allen Defendant's Athletes. Pardon me on behalf of the Clinic of Appellant, Mr. Thomas S. Rodgers, Jr. Pardon me on behalf of the Defendant's Athletes, Mr. Charles H. Allen, Jr. Mr. Roger, you may proceed.  Good morning, Mr. Chairman. Good morning, Justices, Courts and Counsel. May it please the Court, my name is Thomas Rodgers. I represent Firefighter Brian McCumber in this matter. Firefighter McCumber applied for a line-of-duty disability with the pension fund as a result of anxiety disorder. This was his condition of illness for which he was seeking a line-of-duty disability. It resulted from three specific work-related incidences, and these were training exercises that occurred within the Oswego Fire Protection District. He had to go into a burn tower. When he did that, he would manifest symptoms of the underlying anxiety disorder. They were panic attacks. Correct, panic attacks. He would hyperventilate. And in the last case of May 21st of 2015, he actually fell to the ground and had to be dragged out of the training exercise. So it seemed that his symptoms became more and more extreme with each particular episode. Now, we feel that we've met our burden of proof before the pension fund in allowing him to award a line-of-duty disability on behalf of Firefighter McCumber. There's really two elements that Firefighter McCumber needs to prove. One, is he disabled? And two, if he's disabled, is there sufficient access between his work duties as a firefighter and the disabling condition, i.e., his inability to return to work? You look at the board's decision here at the record page. I believe it's either an active duty or is it some sort of disease that is brought on after five years? There is a provision for occupational disease disability pension as well, and we asked for that. As well as an active duty? Right. They're two separate but very similar. And you weren't seeking it under the five-year disability, correct? We did ask for that in the alternative. Oh, you did? Yes. That's not on appeal, though, is it? You're not claiming that you should have been granted that on appeal? No, we asked for the line-of-duty on appeal, Your Honor, and we think he's entitled to it. And the reason being is if you look at the record and the decision word of the board at page 34, the board says quite clearly the evidence in the clause established that the applicant's psychological symptoms, which manifested themselves during these fire drills, rendered him mentally disabled. So, A, they found him disabled, the first element they proved. So it really comes down to the causation element. Was there sufficient access between the job duties and the disabling condition? Didn't he have one or more similar panic attacks back when he first started? He had a similar panic attack, somewhat similar, in 2010, which was when he was first brought on full-time capacity during a training exercise. He did not manifest the symptoms to the degree he did later on in his career, but he did have what one of the supervisors noted as he seemed to hyperventilate and get a little panicky whenever he put on the SCBA and the mask. And I thought that was the case even in 2006. 2006 is not the symptoms were not the same. He did not have a panic attack. He didn't hyperventilate. What he did was he was out of breath when you look at the record. As a result of the exercise, it's not the exact same symptoms that he had in 2006. How is him being out of breath in 2006? It's not written on the record. It's a result of the exercise he was going through at that time. But I don't believe it was a result of having to wear the SCBA and don the mask in a training exercise. Didn't one expert say that he thought that it was morbid obesity that was the reason why Mr. McCumber couldn't fulfill his duties as a firefighter? No, Justice. No one attributed the panic attacks to a specific causative factor. Certainly, his obesity was a causative factor in the underlying condition. There's no dispute about that. But that's not the burden that Firefighter McCumber has. We have to demonstrate that his work as a firefighter was a causative factor in the disabled condition, and that we've done that. There could be a multitude of factors, including obesity, lifestyle, and things of that nature, but having a number of causative factors doesn't eliminate whether or not the job was a causative factor. Maybe I misspoke, or did I misunderstand what the expert, medical expert said, that he thought that it wasn't an emotional problem, it was an obesity problem? If there's an expert that said that, it wasn't one of the experts the Board relied upon. The Board relied upon two experts, Dr. Reff and Dr. Shaw, in coming to its opinion that there was no causative relationship between the work and the medical condition. If you look at Dr. Reff's opinion first, he says it's his opinion the occurrences noted above represent an aggravation of the preexisting anxiety related to wearing the CBA and training exercises. He says it's his opinion that the occurrences in question do demonstrate that while engaging in the activity of wearing the required equipment, he has become symptomatic as a result of this employment condition. So that's Dr. Reff. Dr. Shaw also said that due to the anxiety and panic symptoms occurring during the course of his training, Mr. McCumber is unable to perform full duties in the fire department, and these symptoms, although episodic, are likely to occur when placed in stressful situations, including wearing the CBA. So those are the two doctors that the Board relied upon when it came to causation. There was a third doctor by the pension fund, Dr. Ween, and maybe that's where Your Honor is getting the morbid obesity, but Dr. Ween found that the firefighter McCumber wasn't disabled at all, and the Board didn't come to that finding or decision in order. In fact, as I mentioned at page C34 in their decision, they said that he was mentally disabled. So they gave no weight to Dr. Ween's opinion. I think it was Dr. Adrian, his primary care physician, who diagnosed him with depressive disorder in 2009 and in 2013 diagnosed morbid obesity. He very well may have as a treated physician, but he also diagnosed him with panic and anxiety disorder. So having a multitude of disorders, again, he didn't say that it was depression or being obese that was the cause of his disabled condition or unable to return to work. The cause of his inability to return to work was that he would have these symptoms that would manifest from the condition when he was put into training exercises. Dr. Weine stated in his report that the plaintiff was not disabled from performing his duties as a firefighter as he found no evidence of a current psychiatric diagnosis or disability. Rather, he opined it was far more plausible that this is related to plaintiff's morbid obesity and lack of adequate physical conditioning. And Dr. Weine also noted that the plaintiff returned to the same baseline condition given sufficient time. Right, Justice. And the Board did not rely upon Dr. Weine. The Board did not rely upon the opinion of Dr. Weine, interestingly enough, because they, in fact, found he was mentally disabled. So as far as us meeting on burden of proof, we had at least three doctors. So he's wrong on at least two out of two. He's wrong in the sense that he said that the client didn't have a problem. Correct. And number two, if he had a problem, it was obesity. That's correct, Judge. And, you know, he's the outlying physician here as well. Look at Dr. Rapp, Dr. Shaw, Dr. Williams, and Link. Those three physicians all indicate that the firefighter is clearly disabled. And he's disabled because the symptoms, again, what the reasoning behind it is, you know, when you're dealing with a mental condition or a psychological condition, we can't always pinpoint exactly what's causing these symptoms to manifest themselves, but they were all certain that whatever was going on in these training exercises, and he had a clinical psychologist, Dr. Guara, who's also on the record, she was trying to put her finger on what's causing these symptoms to manifest themselves. And they couldn't be sure about it, but they did know it was these training exercises. Whatever was going on in these training exercises, being in a confined space or being disorientated, whatever it was, that was certainly what was causing the symptoms to manifest themselves to the point they became disabled. Did your client wear SCBA equipment at regular fires? He did. He did, Your Honor. And in the record from 2010 to 2014, he was on at least 15 to 20 structure fires. The finding on the board, he was in confined spaces similar to the training exercises, but he didn't have the same type of anxiety and panic disorder. And, again, he passed all his exams, annual exams from the fire department from 2010 to 2014. There was something about the training that started in 2014 and those two subsequent training exercises that triggered his symptoms. And other than Dr. Whiney, the other physicians all indicated that these training exercises were the, I guess, straw that broke the camel's back, or they were the incidences that manifested the symptoms that caused him to be disabled. And that's really what the case law here requires us to prove, is that there's a causative factor between the job and the disabled condition in order to get a line-of-duty disability. When you look at the medical evidence, it certainly supports it with Dr. Reff and Dr. Shaw's opinions, as well as Dr. Williamson-Link and his clinical psychologist, Dr. Guara, all indicate that the training exercise certainly was a condition that manifested the disabled condition. If you look at the Hammond case decided by this court not too long ago, there they looked at, again, what triggered the symptoms. In the Hammond case, it was non-occupational sources that triggered the symptoms and, therefore, they affirmed the denial of the line-of-duty. You don't have that here, however. We have occupational sources, the training exercise, that triggered the symptoms that caused us to become disabled. Does that take into account the 2010 incident? Sure. Isn't it a pre-existing condition? It is. There's nothing wrong with having a pre-existing condition. You could work as Firefighter McCumber did from 2010 through 2014 with no problems Did he have an underlying pre-existing condition? Sure. Symptoms may have manifested back in 2010 to a lesser or minor degree that didn't arise to a disabling condition. He was able to continue to work full unrestricted duties. He was able to respond to structure fires. Didn't have any particular disabling issues until these training exercises in 2014. And he attempted to come back. I mean, he took the training exercises again in 2015 twice. In fact, the department ordered him back to do the training exercise in May of 2015, and that's where he actually passed out during the drill and had to be dragged out as a result of a Mayday call. So having an underlying condition, the case law is real clear on that. That doesn't necessarily negate your ability to get a line-of-duty disability. If you can demonstrate that the work had a sufficient nexus or was a causative factor in your disabling condition, the disabling condition here is the symptoms that manifest themselves and restrict him from returning to work. So are you saying the training exercises actually caused his condition to become worse? Caused the symptoms of his underlying condition to manifest themselves. So you could say more simply it had to be worse, yes. Because he doesn't have the symptoms until he's in that training exercise. And what's interesting, Lee, is the department mandates that they do these training exercises. The fire department said if you can't do the training exercises, well, you can't be a firefighter. And the board admits that. In fact, the board goes as far as to say these training exercises are an integral part of his job duties as a firefighter, and they constitute an active duty under the statute. It was certainly an assignment that was approved by the chief. So when you look at the second element we have to prove, the causative factor analysis, there's no non-occupational sources that are attributed to these symptoms manifesting themselves. There's no doctor that said, again, other than Dr. Whiney, that said it's because he's morbidly obese is why he's having these symptoms manifest themselves to such a degree, or it's because of his lifestyle or some other factor. The doctors are pretty clear saying the factor here that's manifesting the symptoms that's causing him to be disabled are his participation in these training exercises. And unfortunately, the department is mandating that he has to do these training exercises, and he's required to do those as part of his job duties. That's why we believe we've met our burden of proof here. Do you indicate the standard of review is manifestly or clearly erroneous? Yes, Your Honor. What if it were general review? In my opinion, Judge, under any standard, he's entitled to a line of duty disability. Under de novo review, certainly you'd be able to look at the facts. What if it's manifest way to the evidence? Again, manifest way to the evidence. If you look at the manifest way to the evidence, you look at the doctor's opinions, and you weigh those in the totality, then you should be left with a firm conviction. When we discuss manifest way to the evidence, we discuss the totality of the evidence, do we not? Yes, you do. And that's certainly what the plaintiff would implore Your Honors to do, because we think when you look at the totality of the evidence, again, if one outlined doctor that the board didn't even rely upon, saying it's these other factors that are the cause of the condition, and it's Dr. Shaw, Dr. Ruff, Dr. Williamson-Link, Dr. Guare, that look at the totality of the facts and say, yes, certainly the work is a causative factor. And I think this court has already set the standard of review in the Hammond case that when it's an issue of do the facts satisfy the standard under the law, you utilize the clearly erroneous standard. So we think we've accurately set forth the standard of review. We feel that we've met our burden of proof based on the board's own admissions in their decision and order. The medical supports it, and the testimony of Firefighter McCumber supports it. If there's no other questions from Your Honors, I'll be up here again on rebuttal, but I'm going to ask that you reverse the decision of the board and you find that Firefighter McCumber is entitled to a line of duty disability pension. Thank you. Thank you. Mr. Atwell, you may proceed. Good morning, Your Honors. Good morning. Please, the court and counsel, I should address the, first of all, maybe touch on the issue of the review in this matter. It's our opinion that it's strictly manifest weight. There's no issue of law to be resolved in this particular matter. I understand that there was inserted in this case a question of due process. The addendum opinions in this matter were generated by reason of the plaintiff's request to amend the application for PTSD. However, the board in this case actually found that the applicant was disabled. So any questions which could be gleaned from that question and asked the positions of the selected physicians, the board has determined that he is, in fact, disabled in this case. There's only a question as to whether these events in question that have been cited in support of the application either caused or exacerbated the situation in this particular matter. That's a question of fact. So from that standpoint, I would, first of all, address Section 4-110 of the Firefighter's Pension Code, which I think is the crux of the whole matter, which demonstrates that this is a question of fact. And that statute says, if a firefighter, as a result of a sickness, accident, or injury, incurred in or resulting from the performance of an act of duty or acts of duty. So there has to be a nexus between the events in question that that exacerbated or caused the situation. I think that the record demonstrates that everything here that the applicant suffered from was preexisting. So you're not claiming that the training sessions weren't active duties, or you're not contesting the possibility that they were acts of duties? There are cases, I believe, that indicate that, in some instances, training exercises are not considered active duties, and in others, because I think a hose snagged and created a problem that was not anticipated. It became an act of duty. Yes, sir. We are not protesting the fact that the events were acts of duty. They were acts of duty as to the training exercises. What we are protesting the fact, and what the Board found, is that in those events, he only became symptomatic because of the preexisting situation. And I would point out that the Maryland Webster Dictionary, if we want to talk about the definition of symptomatic, is characteristics of a condition but arising from another cause. That's exactly what happened here. There was preexisting situation, the morbid obesity, the anxiety, the depressive disorder, the issues with family, et cetera, that were all diagnosed by all of the physicians, virtually every one of the medical providers, including applicants' own treating physicians, stated that there was a preexisting situation here, and none of them identified that the actions performed on these dates, these events, caused or exacerbated the situation. And I know that the courts reviewed the medical evidence in this case, but I'm very comfortable that that's what it states. Even the applicant's own treating clinical psychologist could not even determine whether he was fit to come back to work. She couldn't make that determination. Dr. Adrian, his own treating physician, as the court pointed out before, had diagnosed him previously with a depressive disorder and morbid obesity. So I don't think that there's any question in the record that when we're looking at credible evidence, that the Board did rely on credible evidence in support of its decision. So is it your position that his disability predates those training exercises? Absolutely. He only became symptomatic, and I think every one of the physician's medical providers states that. In fact, every one of them basically says he was back to baseline after he was removed from the event. So there's no question that any kind of a similar type of event, whether it was work or not work, would have created the same situation. And we go back with a history back to 2006, where he basically had the same situation before he was even hired as a full-time physician. What do they mean when they say return to baseline? I'm sorry, sir? What do they mean when they say return to baseline? Same condition as he was prior to the event in question. In other words, he could place a scuba or a scuba apparatus on him, put the face mask on him, put his helmet on him, put on all his clothes, and he wouldn't have a panic attack? No, I don't think that they are saying that. But they are saying that there was nothing done in those acts of duty that either caused or exacerbated the situation. And there has to be a nexus, a significant nexus, between the events in question and as far as a cause. And there was nothing during those events that caused the situation. It only became symptomatic at that time. But the previous condition that he suffered from, the preexisting conditions, were the cause of the disability. So after things subsided, returning to baseline mean, as you understand it, he returned to his problem that occurred before he became a firefighter? Yes, sir, that the disability resulted from the preexisting situation, but not from the job. And I think that basically the physicians, if we read both of the reports... So what baseline means, does baseline mean the condition of a firefighter before he is employed? Well, I would say that the baseline means before the event occurred, before the event occurred. There was nothing during the event that exacerbated the situation, that aggravated it, accelerating the disability. You're distinguishing between symptom and cause. I'm sorry? I'm sorry, you are distinguishing between symptom and cause. Yes, I am. I think the doctors have done that. What is the difference between symptom and cause? The difference is because when you become symptomatic, that is not the cause. Symptomatic, according to the physicians, are that if there was something during the event that accelerated the situation or aggravated the situation, that's a different thing. We acknowledge that the event doesn't have to be the sole cause, but it must be a cause, a cause of the situation. And it could be aggravation and exacerbation. There was none of that. It was all preexisting, and each one of the physicians state that. So do you distinguish, then, also between symptom and condition? Well... Because it sounds like the symptoms were exacerbated as a result of the event. His physiological symptoms. Is his underlying condition exacerbated? No. The condition has not been exacerbated. I take the word symptomatic, as the doctors have used, to say it wasn't a cause or an exacerbation of the situation. It was all preexisting, which just seemed to evidence itself at the time of the events in question. Well, and does the fact that the symptoms tend to increase in severity, is that an exacerbation? If they would state that they increased in severity, that could be a situation of aggravation. But that does not, it's not evidence. And I think that the physicians point that out in their reports by saying, when he returned to baseline, there was nothing further that aggravated the situation that accelerated his disability at that point of time. There has to be that nexus, and that's where the statute so clearly defines. And that's the reason the legislature has two forms of disability. Well, would you look at his 2010 incident and the symptoms there, and compare those symptoms to the 2015 incident and say that there was an exacerbation, there was an increase in the severity of the symptoms? I can only state that the medicals do not demonstrate that, according to the physicians. I think that's a medical question, and I can only say what the medicals do. I don't believe that there has been any difference. I believe that the condition as he existed prior to the time has been no further aggravated by the events in question. I mean, I think, and in my letter, correspondence for the Addendum of Opinions, I asked the physicians, does the fact that somebody may not be cut out to do a job, whether it's police, whether it's fire, whether it's physicians, whether it's the Marines, whatever it might be, there are some people that probably just don't have the physical or mental capacity to do those jobs, does that necessarily equate to a disability? That was the question that was asked, and I believe that they addressed that question. However, the board determined that this gentleman is, in fact, disabled from performing the job as a firefighter. But causation, as required by the statute, is a different deal. One thing is disability. The other thing is, did the events in question cause or exacerbate the situation? Very clear by the statute. That's a fact question. The board believes that they relied on credible evidence in support of its decision. The board gave him a disability, or pardon me, they gave him a pension but not a disability. No, sir, they did not. And the reason for that is, and I did address that in the brief, because there has been a theory that boards, even though somebody does not request an alternative, not on duty, that the board still has that option to give that to them if it qualifies. However, the fire statute is unique in requiring, as a condition preceding, that they must have accumulated seven years of creditable service before becoming disabled. This gentleman did not, so he could not receive a non-duty. I would also point out that that had not been requested, or they had not requested to amend the application to seek a non-duty. Isn't the seven-year pension based upon ingestion of toxic materials, or am I misunderstanding? No, sir, there's still, even in that event, which was never requested, but even in that event, there is a period of time creditable service which he would not qualify. Yes, but the point is, assuming that he had qualified in the time, there are toxic materials that are supposed to destroy your lungs and possibly destroy your heart. I thought, because I was on another case where the question was, was there evidence that would entitle him to a disability pension? Was there evidence that there were fire calls that the firefighter went on where these toxic, volatile chemicals could have been ingested or inhaled? There was no evidence to that extent. I would also say that I believe from the medicals, as far as the mental disability request, that certainly wouldn't apply in this particular case. I think we'd be talking about the occupational disease statute in this case, but I don't frankly glean anything from this case that would have application under there. I thought Mr. Rogers said that they made a request for such a pension. But I can only state that in this particular case, it was for the request for the line of duty. In this particular case, there was no evidence that was developed in this case that would indicate that it was anything other than the preexisting conditions which we talked about, nothing that further contributed to the mental disability in this case. Thank you very much. Thank you. Mr. Rogers, would you clarify whether you did or you didn't? Yes, I did. I don't know what I was thinking, Your Honor, but I apologize. I misspoke. We did not ask any alternative for an occupational disease. The reason being is that it applies to heart and lung, and we have a psychological condition here. So we did not ask for the occupational disease. And counsel is correct. You do need seven years in order to get a non-duty disability, and my client was shy of that by a few months. So we didn't apply for a non-duty in the alternative either because that was simply not a benefit applicable to him. Right, okay. But, again, we believe he was entitled to the line of duty. And I want to address a couple of things that came up when I was originally up here. First, I think Justice Jorgensen asked about the 2006 training exercise and what was going on there. That was not a situation where we had smoke and fumes, and he was in a small, confined space. It was an evolution drill which involved throwing ladders, forcible entry, and a firefighter rescue scenario where the symptoms were that the firefighter was out of breath and had trouble controlling his breathing is what they found there. So the symptoms were different back in 2006. And in 2010, the supervisor, this is when the firefighter becomes seven months on the job, the supervisor did note that he begins to hyperventilate and show signs of anxiety when he has the SCBA app during the training exercise. So, again, the statute allows for disability from line of duty and for cumulative effects of duty-related injuries. So the 2010 incident... Did anyone, any of the physicians conclude that this was a cumulative effect? It's not clear in their reports. I don't think that was asked of them by the fund. They said that the training exercises were the reason for the disabling condition, i.e., the inability to work. And the 2010 was, again, another training exercise he was involved in. But we don't think that was the incident that was the disabling, the nexus to the disabling condition because he was able to work from 2010 through 2014, again, responding to structure fires, being in confined spacing, wearing the SCBA, and didn't seem to manifest any symptoms. Again, it wasn't until he did these burn tower trainings where it's a more confined space, you can't really see where you're going, the firefighter became disorientated, and that seemed to manifest the symptoms. And that was the conditions of these three particular training exercises. You asked, I think the standard here is very important, and it seems to be getting a little bit blurred. As counsel is talking about a diagnosis of depression and morbid obesity, again, we have to prove that the work was a causative factor in the disability. And the definition of disability is important. It's the inability to do the work because of your condition. It's not proving a cause of the condition. So the firefighter doesn't have to demonstrate that the work caused his anxiety disorder. That's not the standard. What we have to demonstrate is it caused his disability. And the disability is the inability to work when he has these symptoms that are magnified by the training. So, you know, did we prove a sufficient nexus? Yeah, and that's because the condition was exacerbated because of the symptoms and the severity of the symptoms during the training exercise. Counsel talked about the credible evidence in the record that they relied upon that denied a line-of-duty disability. The only credible medical evidence in the record was Dr. Shaw and Dr. Reth. Dr. Shaw said the level of anxiety and stress was greater during these training exercises, and that's why he can't continue to do the work. So that's the credible evidence that the board relied upon to deny, but really what the doctors are saying is that this is a compensable line-of-duty claim. Same with Dr. Reth. He said he can only opine that the distress was likely based on a response to a psychological phenomenon that stimulated during these training exercises. The opinions of the physicians relied upon by the board didn't talk about morbid obesity or depression. I should clarify something. Were the doctors talking about, in general, that training sessions are, and in part because they're designed to be, more stressful than real-life fires? Or were they opining that with this particular fireman, that the stress levels were higher than they would be when he was attending a fire? They didn't do a comparative analysis to the training versus actual structure fires, in their opinions or in their reports. But I think it goes more towards the later, that there was something about these training exercises that caused this particular firefighter to not be able to continue to do the job as a fireman. Well, the reason why I'm asking is because it seems like the argument that you may not be making but seems to resonate with me is that a firefighter that can fight a fire but can't go through a training session should be given a pension, even though he can fight fires, he can't go through the training sessions. There seems to be something paradoxical or inconsistent with that concept, that he can do his job, but he can't do his training for his job. Well, I think, and I understand what you're saying, Gus. I think the concern is maybe he just hasn't had that exact scenario play out in a structure fire. That wasn't real clear as evidence. The concern of the fire department is if he gets stuck in a confined space filled with smoke and gets disorientated, he's going to be a liability, and we don't want him on the department. The fire department is saying he has to pass this training. It's mandatory, and the pension fund agreed. It's an integral part of the job. So whether it's fighting a fire or doing the training, they look at those as synonyms. The fire department does. They're saying you can't do the job if you can't pass the training. Synonyms? Pardon me? Synonyms, that's without which? Yeah, so I understand the paradox there, but that's the paradox set up by the department and the pension fund. Thank you. We'll take the case under advisement until we have one more case to recall. We'll have a short recess.